IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELONZA JESSE TYLER,

        Plaintiff,                    No. CIV S-06-1883 MCE EFB P

    vs.

R.L. ANDREASEN, M.D., et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. He claims that defendants Donahue, Mehta, and Andreasen were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The matter is currently before the court on defendants' October 5, 2007, motion for summary judgment. The court has considered the moving and opposing papers and issues the following findings and recommendations on the motion.

**I.    Facts**

       At all times relevant to the motion, plaintiff was an inmate lawfully incarcerated at the California Medical Facility ("CMF"). Complaint ("Compl."), 1. At all relevant times each of the defendants was employed by the California Department of Corrections and assigned to CMF.

////

Defs.' Mot. for Summ. J., Decl. of Kathleen Donahue in Supp. Thereof ("Donahue Decl."), ¶ 1; Decl. of Raymond Andreasen, M.D., in Supp. Thereof ("Andreasen Decl."), ¶ 1; Decl. of Deepak Mehta, M.D., in Supp. Thereof ("Mehta Decl."), ¶ 1. Defendant Donahue was a medical appeals analyst with no medical training. Donahue Decl., ¶2. Defendant Mehta is and was at all relevant times a licensed medical doctor and provided primary medical care and treatment to inmates at CMF. Mehta Decl., ¶ 2. Defendant Andreasen is and was at all relevant times a duly licensed medical doctor and Chief Medical Officer at CMF. Andreasen Decl., ¶ 2.

Plaintiff states that he suffered an injury on September 4, 2003, while working at his assigned prison job, for which he claims he did not receive adequate medical treatment. Compl., 5. On December 12, 2005, plaintiff was transferred to CMF for post-operative treatment. Compl., 6. Defendant Dr. Mehta examined plaintiff on December 20, 2005, who opined that plaintiff needed to begin physical rehabilitation post surgery from the operation he had in March 2005. Mehta Decl., ¶ 5. Defendant Mehta prepared orders to provide plaintiff with such treatment immediately and also recommended that plaintiff receive a follow-up examination. *Id.* Plaintiff was seen for a follow-up appointment on December 28, 2005, and was at that time given a referral to an orthopedic specialist and Tylenol #3 for pain. *Id.*; Pl.'s Opp'n, Ex. 1, at 6.

Plaintiff later filed a grievance seeking orthopedic treatment. Compl., 6. Plaintiff was seen by Dr. Kofoed on February 27, 2006, and X-rays were subsequently taken, showing "moderately severe osteoarthritis" in the left knee and "milder osteoarthritis" in the right knee. Andreasen Decl., ¶ 9. Dr. Kofoed examined plaintiff again on April 24, 2006, and at that time recommended that plaintiff have arthroscopic surgery on his left knee. *Id.*, ¶ 10; Compl., 6. Plaintiff was scheduled for surgery in June 2006. Compl., 6.

Dr. Kofoed ended his contract with CMF prior to the date set for surgery. Andreasen Decl., ¶ 11. Defendant Andreasen approved having plaintiff taken to Queen of the Valley Hospital to consult with their orthopedic surgeon, Dr. Shifflett, on June 23, 2006. *Id*.

Plaintiff had surgery on September 13, 2006.

## II. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set

forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

4

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On January 18, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.   Analysis**

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' " *Hudson v. MacMillian*, 503 U.S. 1, __, 112 S.Ct. 995, 1000 (1992) . A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Gamble*, 429 U.S. at 104, 97 S.Ct. at 291. Either result is not the type of "routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at __,

5

112 S.Ct. at 1000 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *See, e.g., Wood v. Housewright,* 900 F.2d 1332, 1337-41 (9th Cir.1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989).

Negligence is not enough for liability under the Eighth Amendment. *Farmer*, 511 U.S. at 835-36 & n4. An official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). Prison officials violate their constitutional obligation only by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

Prison officials violate the Eighth Amendment when they engage in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one that today's society chooses to tolerate." See *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Deliberate indifference "may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d

6

390, 394 (9th Cir. 1988). When prison medical personnel act based on "a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996). Prison officials provide constitutionally inadequate care when they know that a particular course of treatment is ineffective, but they do not alter it in an attempt to improve treatment." *See Jett v. Penner*, 439 F.3d 1091, 1097-1098 (9th Cir. 2006). A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). Unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care. *Id*. at 1062.

The substance of plaintiff's claim is that the surgery for which he was scheduled in June 2006 was not performed until September 2006, and that this rescheduling and resulting delay evinces deliberate indifference to his serious medical needs.

### A. Defendant Dr. Mehta

Plaintiff claims that defendant Dr. Mehta failed to ensure that plaintiff receive necessary orthopedic evaluation and treatment and required plaintiff to engage in physical therapy "that would not restore him to full function," and instead caused him "continued pain and dysfunction." Compl., 8. Plaintiff also claims that because of this pain in his knee he was unable to exercise and, as a result, gained weight and developed diabetes.

The evidence shows that Dr. Mehta examined plaintiff a little over one week after plaintiff's transfer to CMF, prepared orders for plaintiff to receive physical rehabilitation, and scheduled plaintiff for a follow-up examination. Mehta Decl., ¶ 5. At plaintiff's follow-up appointment the following week, Dr. Mehta referred plaintiff to an orthopedic specialist and prescribed Tylenol #3 for pain. *Id.*; Opp'n, Ex. 1 at 6. Dr. Mehta scheduled plaintiff for an additional follow-up appointment within four weeks. *Id.*

1   Plaintiff claims that the physical therapy prescribed by Dr. Mehta was "improper," Opp'n
2 at 3, but has not produced evidence that the care provided by Dr. Mehta was constitutionally
3 inadequate. Plaintiff claims that he was made to endure pain while awaiting surgery and should
4 not have had to be re-examined by medical personnel at CMF, as he had already been seen by an
5 orthopedic specialist prior to his transfer. Opp'n, at 7, 8. The evidence shows that Dr. Mehta
6 examined plaintiff within eight days of his arrival at CMF, and within two weeks had scheduled
7 follow-up appointments to monitor plaintiff's treatment, prescribed a course of physical therapy
8 and pain medication, and referred plaintiff to a specialist. Deliberate indifference may be
9 manifested "when prison officials deny, delay or intentionally interfere with medical treatment,"
10 or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974
11 F.2d 1050, 1059 (9th Cir.1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104
12 F.3d 1133, 1136 (9th Cir.1997) (en banc).

13   "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,
14 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the
15 facts from which the inference could be drawn that a substantial risk of serious harm exists,' but
16 that person 'must also draw the inference.' " *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If
17 a prison official should have been aware of the risk, but was not, then the official has not
18 violated the Eighth Amendment, no matter how severe the risk.' " *Id*. (quoting *Gibson v. County
19 of Washoe*, *Nevada*, 290 F.3d 1175, 1188 (9th Cir.2002)).

20   Where a prisoner is alleging a delay in receiving medical treatment, the delay must have
21 led to further harm in order for the prisoner to make a claim of deliberate indifference to serious
22 medical needs. *McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison
23 Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Plaintiff has not produced evidence that Dr.
24 Mehta deliberately delayed his surgery. The undisputed evidence is that Dr. Mehta examined
25 plaintiff twice and prescribed a course of treatment within two weeks of plaintiff's arrival at
26 CMF. That plaintiff feels he should have received treatment more quickly does not implicate

liability on part of Dr. Mehta. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1986) (internal citations omitted). Plaintiff has not produced evidence showing that Dr. Mehta "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. at 837. Dr. Mehta is therefore entitled to summary judgment.

### B. Defendant Dr. Andreasen

Plaintiff alleges that defendant Andreasen is "responsible for overseeing a system for coordination of medical care for inmates," and that he is therefore responsible for the delay in plaintiff's treatment. Compl., 7. The undisputed evidence is that plaintiff was seen by medical personnel and referred to a specialist within two weeks of his arrival at CMF. His consult with the orthopedic specialist resulted in arthroscopic surgery being scheduled for June. The June surgery was rescheduled for September as a result of Dr. Kofoed's termination of his contract with CMF. Plaintiff has not shown any evidence whatsoever that his surgery was delayed due to deliberate indifference on part of defendant Andreasen. In fact, the evidence shows that Dr. Andreasen approved having plaintiff taken to Queen of the Valley Hospital to consult with their orthopedic surgeon on June 23, 2006. Andreasen Decl., ¶ 11; Compl. 6. Summary judgment is therefore appropriate for Dr. Andreasen.

### C. Defendant Donahue

Plaintiff claims that defendant Donahue interfered with and rescinded plaintiff's prescribed course of treatment by failing to provide care deemed necessary by a treating orthopedic surgeon. Compl., 9. Plaintiff also claims that defendant Donahue assured the Chief of Inmate Appeals that the surgery would be provided to plaintiff and then failed to provide this

9

1 care. *Id.* Defendant Donahue is a medical appeals assistant and not a medical care provider.
2 Donahue Decl., ¶ 2. Plaintiff claims that defendant Donahue was deliberately indifferent
3 because she correctly stated that surgery was scheduled for June 2006, although that surgery was
4 ultimately canceled. The extent of defendant Donahue's involvement in plaintiff's care was
5 merely to ensure that his grievances were addressed by appropriate medical personnel. Contrary
6 to plaintiff's contentions, defendant Donahue was not charged with providing care to plaintiff.
7 Plaintiff has not alleged any evidence that defendant Donahue "[knew] of and disregard[ed] an
8 excessive risk to [plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. at 837. Summary
9 judgment is also appropriate for defendant Donahue.

10     Accordingly, it is hereby recommended that defendants' October 5, 2007, motion for
11 summary judgment be granted and that the Clerk be directed to close this case.

12     These findings and recommendations are submitted to the United States District Judge
13 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after
14 being served with these findings and recommendations, any party may file written objections
15 with the court and serve a copy on all parties. Such a document should be captioned "Objections
16 to Magistrate Judge's Findings and Recommendations." Failure to file objections within the
17 specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158
18 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19 Dated: August 22, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE